IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION



KASIM GANDY,

    Plaintiff,

v.

TOM GRAMIAK; EDWINA JOHNSON;
JOHN BOYETT; NATHAN BROOKS;
WILLIAM STEEDLY; AUSTIN ADAMS;
KIMBERLY LOWE; and UNIT MANAGER
COX,

    Defendants.

CIVIL ACTION NO.: 5:16-cv-44

### ORDER and MAGISTRATE JUDGE'S AMENDED REPORT AND RECOMMENDATION

    Plaintiff, an inmate at Ware State Prison ("WSP") in Waycross, Georgia, filed this cause of action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights. On April 11, 2017, I issued a Report and Recommendation, (doc. 47), to grant in part and deny in part Defendants' Motions to Dismiss, (docs. 21, 34). For the reasons and in the manner set forth below, I hereby **VACATE IN PART** the Report and Recommendation issued April 11, 2017. Specifically, I **VACATE** only Section II of the Report discussing Plaintiff's due process claims and enter the following in its stead. All other Sections of the April 11, 2017, Report and Recommendation, as supplemented herein, are undisturbed and remain my Recommendation to the Court.[1]

---

[1] Section I recommends dismissal of Plaintiff's claims against Defendant Adams for failure to exhaust, and Section III recommends denying Defendants qualified immunity.

Accordingly, I **RECOMMEND** the Court **GRANT IN PART** and **DENY IN PART** Defendants' Motions to Dismiss, (docs. 21, 34). For the reasons set forth below, the Court should **GRANT** the portion of Defendants' Motions to Dismiss as to Defendants Johnson and Boyett and **DISMISS** Plaintiff's claims against those Defendants in their entirety. Additionally, the Court should **GRANT** the portion of Defendants' Motions to Dismiss as to Plaintiff's substantive due process claims. However, the Court should **DENY** the portion of the Motions to Dismiss as to Plaintiff's procedural due process claims.

## BACKGROUND[2]

Upon his arrival at WSP, prison officials placed Plaintiff in a Tier II Segregation Housing Unit based on his disciplinary history at Rogers State Prison. (Doc. 1-1, p. 3.) However, Plaintiff claims that he was not in the Tier II program at Rogers State Prison and did not meet the requirements set forth in WSP's Standard Operating Procedure for placement in a Tier II Unit. (Doc. 25, p. 12.) Plaintiff further contends that Defendants Brooks, Steedley, and Lowe failed to provide him an opportunity to prepare a defense and did not conduct an initial placement hearing or a 90-day review of his assignment. Because of these failures, Plaintiff avers that he was unable to initiate the appeal process regarding his segregation. (Doc. 1-1, p. 3.) Additionally, Plaintiff alleges that on February 10, 2016, following an altercation with another inmate, he received a reassignment to Tier II Phase One, again without a hearing, an opportunity to prepare a defense, or a 90-day review. (Id. at p. 11.)

Plaintiff claims that the conditions of the Tier II Unit are drastically different from those in general confinement. Among other things, Plaintiff alleges that cells in the segregation unit are stripped of any furniture, inmates are not afforded any out-of-cell recreation time, visitation and

---

[2] The Court takes the following facts from Plaintiff's Complaint and assumes them to be true, as it must at this stage.

phone times are drastically limited, and inmates have restricted access to educational, religious, and vocational opportunities. (Id. at pp. 4–5.)

Plaintiff's only remaining claims after frivolity review were his procedural and substantive due process claims and his retaliation claim against Defendant Adams. (Doc. 10.) Defendants Adams, Cox, Gramiak, Johnson, Lowe, and Steedley filed a Motion to Dismiss on October 19, 2016, arguing that Plaintiff failed to exhaust his available administrative remedies as to his retaliation claim against Defendant Adams and failed to state a claim upon which relief may be granted. (Doc. 21.) Defendants Boyett and Brooks filed a similar Motion to Dismiss on January 30, 2017. (Doc. 34.) Plaintiff filed Responses to both Motions. (Docs. 25, 40.)

On April 11, 2017, I issued a Report recommending that the Court grant in part and deny in part the Motions to Dismiss. (Doc. 47.) Specifically, I recommended dismissal of Plaintiff's claims against Defendant Adams, Boyett, and Johnson, but recommended allowing Plaintiff's procedural and substantive due process claims to proceed as to all other Defendants. Defendants filed Objections on May 9, 2017. (Doc. 56.) Given the arguments raised in Defendants' Objections, I find it proper to revise my Report and Recommendation before this matter is submitted to the District Judge for review.

## STANDARD OF REVIEW

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010)

(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

## DISCUSSION

The Due Process Clause of the Fourteenth Amendment protects against State deprivations of "life, liberty, or property without due process of law." U.S. Const. amend. XIV. "The most familiar office of that Clause is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992). This is known as the procedural due process component of the Clause. However, the meaning of "liberty" under the Due Process Clause has been expanded to include certain implied, "fundamental rights" that "cannot be limited at all, except by provisions that are narrowly tailored to serve a compelling state interest." Kerry v. Din, ___ U.S. ___, 135 S. Ct. 2128, 2133 (June 15, 2015) (quotations and citations omitted). This guarantee is known as the substantive component of the Due Process Clause. Substantive due process is a controversial and frequently assailed doctrine. See, e.g., McDonald v. City of Chicago, ___ U.S. ___, 130 S. Ct. 3020, 3062 (2010) (Thomas, J., concurring) ("The notion that a constitutional provision that guarantees only

4

'process' before a person is deprived of life, liberty, or property could define the substance of those rights strains credulity for even the most casual user of words. . . . The one theme that links the Court's substantive due process precedents together is their lack of a guiding principle to distinguish 'fundamental' rights that warrant protection from nonfundamental rights that do not."); Nat'l Aeronautics & Space Admin. v. Nelson, 562 U.S. 134, 161 (2011) (Scalia, J., dissenting) (describing substantive due process as an "infinitely plastic concept").

## I.    Procedural Due Process

A Section 1983 action alleging a procedural due process violation requires proof of three elements: "deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally-inadequate process." Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). Plaintiff does not allege that his due process right to property has been threatened by his placement in Tier II segregation. Accordingly, the appropriate due process analysis requires a look into Plaintiff's liberty interests.

Historically, the liberty interest protected by the Due Process Clause included the right "generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." Ingraham v. Wright, 430 U.S. 651, 673 (1977) (citations omitted); see also Kerry, ___ U.S. at ___, 135 S. Ct. at 2132–33. However, the Eleventh Circuit Court of Appeals has identified two situations in which a prisoner—already deprived of liberty in the traditional sense—can be further deprived of liberty such that procedural due process protections are required: (1) when there is a "change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court[ ]"; and (2) when the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation

to the ordinary incidents of prison life." Kirby v. Siegelman, 195 F.3d 1285, 1291 (11th Cir. 1999) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Under the first scenario, the liberty interest arises from the Due Process Clause itself and "exists apart from the state; in the second, the liberty interest is created by the state." Id. (citing Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999)); see also Sandin, 515 U.S. at 484 ("[Liberty] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (internal citations omitted).

### A. Whether Plaintiff Alleges a Liberty Interest Arising from the Due Process Clause Itself

Our judicial history is replete with cases determining when the conditions of confinement are so severe that it essentially exceeds the sentence imposed by the court. See, e.g., Washington v. Harper, 494 U.S. 210 (1990) (liberty interest in avoiding involuntary administration of psychotropic drugs to inmate); Vitek v. Jones, 445 U.S. 480 (1980) (liberty interest in avoiding involuntary psychiatric treatment and commitment to mental institution); Kirby, 195 F.3d 1285 (liberty interest in not being branded a sex offender when inmate was never convicted of a sex crime). These cases all address a liberty interest arising from the Due Process Clause itself and are "expressly protected . . . under the original understanding of the term [liberty]." Kerry, ___ U.S. at ___, 135 S. Ct. at 2137. Notably, this interest does not include "a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)); see also Sandin, 515 U.S. at 485 ("Discipline by prison officials [including disciplinary segregation] in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.")

Accordingly, Plaintiff's placement in Tier II segregation does not implicate a liberty interest arising from the Due Process Clause itself. Plaintiff's segregation does not rise to the level of a change so severe that his conditions of confinement essentially exceed the sentence imposed by the Court.

### B.     Whether Plaintiff Alleges a State-Created Liberty Interest

However, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in Sandin[.]" Wilkinson, 545 U.S. at 222 (internal citation omitted). Specifically, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves[.]" Id. at 223. Thus, Sandin requires the Court to determine whether the conditions of confinement impose an atypical and significant hardship on the inmate "in relation to the ordinary incidents of prison life." 515 U.S. at 484.[3]

Courts have noted, though, that whether a state-created liberty interest is implicated by "atypical and significant hardship" is often "a fact intensive inquiry." Whitsett v. Cannon, 139 F. Supp. 3d 1293, 1302 (M.D. Fla. 2015). "Indeed, much of the Eleventh Circuit and Supreme Court authorities determining the existence of state created liberty interests compare such evidence on summary judgment or at trial, rather than at the pleading stage[.]" Id. at 1304 (collecting cases). In fact, at the motion to dismiss stage of the proceedings, "courts are less willing to dismiss claims for failure to allege a state-created liberty interest[.]" Id. (collecting cases).

---

[3] In Sandin, the United States Supreme Court found no liberty interest when an inmate was assigned to segregated confinement for thirty days because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." 515 U.S. at 485. The Supreme Court noted that the inmate's sentence was unaffected by this assignment, and the conditions of disciplinary segregation mirrored the conditions of administrative segregation and protective custody. Id. at 485–86.

7

In his Complaint, Plaintiff details various instances in which conditions in Tier II vary significantly from those in general population. He asserts that: his cell is completely unfurnished; he does not receive any out-of-cell recreation time; only one two-hour non-contact visit each month is permitted; he has limited phone use; he has no access to his personal property; and he has limited access to a variety of other prison resources, including, *inter alia*, the prison library, the commissary, and educational, religious, and vocational opportunities. (Doc. 1-1, pp. 4–5, 11–14) Thus, at this stage of the litigation, Plaintiff alleges sufficient facts to support his claim that the conditions in Tier II segregation impose the type of atypical and significant hardship to trigger a state-created liberty interest. See, e.g., Bass, 170 F.3d 1312 (Protected liberty interest found in yard time where close management inmates could be deprived of all outdoor exercise time); Wallace v. Hamrick, 229 F. App'x 827 (11th Cir. 2007) (Liberty interest found where plaintiff was in administrative segregation for 28 days with no hot water, no ventilation, and no opportunity for exercise while awaiting a hearing on his disciplinary violations); but cf., e.g., Turner v. Warden, 650 F. App'x 695 (11th Cir. 2016) (No liberty interest found where plaintiff regularly received meals, five hours of outdoor recreation time each week, showered three times per week, was allowed personal property, was not denied human contact, and received visitation on weekends, as these conditions were similar to those in general population); Walker v. Grable, 414 F. App'x 187 (11th Cir. 2011) (No liberty interest where inmate was placed in administrative segregation for only 11 days and failed to allege that conditions in segregation were different from conditions in general population); Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9 (11th Cir. 2010) (No liberty interest found for inmate placed in segregation because plaintiff could not show that segregation caused a major disruption to his environment as compared to placement in general population); Smith v. Sec'y, Fla. Dep't of Corr., 358 F. App'x 60 (11th

Cir. 2009) (No liberty interest where plaintiff admitted that disciplinary confinement conditions were essentially the same as conditions in administrative confinement).[4]

Furthermore, Plaintiff alleges that his segregation is indefinite and that Defendants refuse to conduct any 90-day review of his segregation assignment. (Doc. 1-1, pp. 6, 11); see Al-Amin v. Donald, 165 F. App'x 733, 739 (11th Cir. 2006) ("[A]dministrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates.") (citing Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983), *modified on other grounds by* Sandin, 515 U.S. at 481).

While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together, Plaintiff alleges sufficient facts to support a state-created liberty interest in his confinement. Wilkinson, 545 U.S. at 224. This is especially true in light of the less stringent Iqbal plausibility standard required at this stage of the proceedings (as opposed to the summary judgment stage) and the Eleventh Circuit's preference to resolve these fact-intensive inquiries at the summary judgment or trial stage. Iqbal, 556 U.S. at 678.

### C.     Whether Plaintiff Alleges Constitutionally Inadequate Process

Given that Plaintiff has alleged a liberty-interest in his conditions of Tier II confinement, the Court must determine what process was owed to Plaintiff and whether Plaintiff has plausibly alleged that Defendants failed to provide that process.[5] To determine whether a plaintiff was denied due process, courts must apply a three-part balancing test to weigh "the private interest at stake in a governmental decision, the governmental interests involved, and the value of procedural

---

[4] Pertinently, the vast majority of these cases were decided at the summary judgment stage.

[5] Defendants do not contest the state-action component of the due process analysis.

requirements." Hewitt, 459 U.S. at 473 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).[6] With regard to prisoners in administrative segregation, the Eleventh Circuit has noted that "procedural requirements set out in the regulation are not themselves constitutional mandates." Magluta v. Samples, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004). Nevertheless:

> [A]n informal, nonadversary evidentiary review [is] sufficient both for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him. An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.

Hewitt, 459 U.S. at 476; see also Wilkinson 545 U.S. at 229 ("Although Sandin abrogated Greenholtz's and Hewitt's methodology for establishing the liberty interest, these cases remain instructive for their discussion of the appropriate level of procedural safeguards."). Additionally, the Eleventh Circuit has held that prisoners retained in administrative segregation must receive "some sort of periodic review of the confinement[.]" Hale v. Sec'y for Dep't of Corr., 345 F. App'x 489, 493 (11th Cir. 2009) (citing Sheley v. Dugger, 833 F.2d 1420, 1426 (11th Cir. 1987)).

Based on the standards described above, Plaintiff has alleged sufficient facts in his Complaint to support his claims for lack of process. Plaintiff contends that Defendants failed to provide any process, much less a review of his Tier II classification.[7] (Doc. 1-1, pp. 3–4, 11–12.)

---

[6] The Supreme Court has noted that this analysis is independent of the Sandin inquiry. See Wilkinson, 545 U.S. at 225 ("Sandin concerned only whether a state-created liberty interest existed so as to trigger Mathews balancing at all. Having found no liberty interest to be at stake, Sandin had no occasion to consider whether the private interest was weighty vis-à-vis the remaining Mathews factors.").

[7] Plaintiff alleges that Defendants Brooks, Steedley, Lowe, and Cox comprised the Tier II Program's Classification Committee during his confinement, and therefore, are responsible for his alleged due process violation because they make the classification recommendations. (Doc 1-1, p. 2; Doc. 1-2, pp. 4–5; Doc. 25, p. 13.) Additionally, Plaintiff claims that Defendant Gramiak is responsible because he must approve the Classification Committee's decision to place an inmate in the Tier II Program. (Doc. 25, p. 13.) Thus,

Defendants argue that Plaintiff's placement in Tier II did not result from constitutionally inadequate process because his placement "did not result from *any* disciplinary or other proceeding," and therefore, Plaintiff was not owed the due process protections set forth in Wolff v. McDonnell, 418 U.S. 539 (1974).  (Doc. 21-1, pp. 12–13) (emphasis in original).  Additionally, Defendants argue that any violation of the Georgia Department of Corrections' ("GDC") policies by failing to provide an initial placement hearing and a 90-day review are simply policy violations and do not rise to the level of constitutional violations.  (Id. at p. 13.)

However, as previously established, placement in administrative segregation requires some level of process, minimal though it might be.  These due process protections may not be identical to GDC's policy requirements or even the requirements set forth in Wolff, but Plaintiff alleges—and Defendants do not currently contest—that he received no process at all.[8]

Accordingly, the Court should **DENY** this portion of Defendants' Motions to Dismiss as to Defendants Brooks, Steedley, Lowe, Cox, and Gramiak.  However, the Court should **GRANT** the Motions to Dismiss as to Defendants Johnson and Boyett.[9]

## II.  Substantive Due Process

Although Plaintiff may have a liberty interest that triggers certain procedural protections under the Due Process Clause, the Court must determine whether this interest rises to the level of a fundamental right.  As established above, the substantive component of the Due Process Clause

---

it appears that Plaintiff has named Defendants Brooks, Steedley, Lowe, Cox, and Gramiak based on more than their positions as supervisors.  See Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

[8] The Court makes no determination as to whether the February 10, 2016, reassignment to Tier II Phase One may be considered a disciplinary proceeding, as it followed in the wake of Plaintiff's altercation with another inmate.

[9] Plaintiff fails to make any specific allegations against Defendants Johnson and Boyett in his Complaint. See Anderson v. Fulton Cty. Gov't, 485 F. App'x 394 (11th Cir. 2012) (dismissal proper where plaintiff failed to describe any specific allegations against defendant).

"provides heightened protection against government interference with certain fundamental rights[.]" Washington v. Glucksberg, 521 U.S. 702, 718–19 (1997) (internal citations omitted). If Plaintiff has a fundamental right, then the government may not infringe on that right unless it proves that the limitation is "narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

The Supreme Court has specified these fundamental rights throughout a long line of cases. See Glucksberg, 521 U.S. at 720 (collecting cases). However, any substantive due process analysis "must begin with a careful description of the asserted right," because the "doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." Reno, 507 U.S. at 302 (internal quotation and citations omitted). Furthermore, in determining what a fundamental right is, "the relevant question is not whether the asserted interest is consistent with this Court's substantive-due-process line of cases, but whether it is supported by this Nation's history and practice." Kerry, ___ U.S. at ___, 135 S. Ct. at 2135 (internal quotations and citations omitted). Specifically, fundamental liberty rights must be so "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Glucksberg, 521 U.S. at 720–21 (internal quotations and citations omitted).

Here, Plaintiff claims that he has a fundamental right to be free from administrative segregation from the prison's general poplulation. This right is not already enumerated within the Supreme Court's "substantive-due-process line of cases." Accordingly, the Court must determine whether there is a "deeply rooted" history and practice to be free of segregation. The Supreme Court has repeatedly found that "lawfully incarcerated persons retain only a narrow range of protected liberty interests." Hewitt, 459 U.S. at 467; see also Montanye v. Haymes, 427 U.S. 236,

242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."). Furthermore, the Supreme Court's decisions "have consistently refused to recognize more than the most basic liberty interests in prisoners." Id. These interests do not include freedom from more adverse conditions of confinement. Meachum, 427 U.S. at 224–25. Thus, there is no "objectively, deeply rooted" history and practice in this Nation to be free from segregation or even a segregation with more adverse conditions.

Accordingly, the Court should **GRANT** this portion of Defendants' Motions to Dismiss and **DISMISS** Plaintiff's substantive due process claims as to all Defendants.

## CONCLUSION

Based on the foregoing, I **VACATE IN PART** the April 11, 2017, Report and Recommendation, (doc. 47). To be clear, I **VACATE** only Section II of the Report discussing Plaintiff's due process claims. All other Sections of the April 11, 2017, Report and Recommendation, as supplemented herein, are undisturbed and remain my recommendation to the Court.

Accordingly, I **RECOMMEND** the Court **GRANT IN PART** and **DENY IN PART** Defendants' Motions to Dismiss, (docs. 21, 34). The Court should **GRANT** the portion of Defendants' Motions to Dismiss as to Defendants Johnson and Boyett and **DISMISS** Plaintiff's claims against those Defendants in their entirety. Additionally, the Court should **GRANT** the portion of Defendants' Motions to Dismiss as to Plaintiff's substantive due process claims. However, the Court should **DENY** the portion of the Motions to Dismiss as to Plaintiff's procedural due process claims.

13

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 3rd day of July, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA