# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

KASIM GANDY,

    Plaintiff,

v.

TOM GRAMIAK, et al.,

    Defendants.

CIVIL ACTION NO.: 5:16-cv-44

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants' April 13, 2018 Motion for Summary Judgment, doc. 88, as supplemented, doc. 92. Based on the reasons which follow, I **RECOMMEND** the Court **GRANT** Defendant's unopposed Motion, **DISMISS** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal.

## BACKGROUND[1]

Plaintiff, who is currently incarcerated at Ware State Prison in Waycross, Georgia, filed this 42 U.S.C. § 1983 action on June 9, 2016, to contest certain conditions of his confinement. Doc. 1. Plaintiff's procedural due process claims against Defendants Brooks, Steedley, Lowe, Cox, and Gramiak are currently pending before this Court. Doc. 65 at 11, 13; Doc. 68 at 1–2. Plaintiff entered Tier II segregation upon his arrival to Ware State Prison on May 7, 2015, and remained there for around two years. Doc. 1-1 at 3; Doc. 92-1 at 2, 13. Plaintiff argues that Ware State Prison officials violated his rights by placing him in Tier II administrative

---

[1] The recited allegations are taken from Plaintiff's Complaint and are viewed in the light most favorable to Plaintiff, the non-moving party.

segregation, even though he did not meet the criteria for Tier II placement set forth Ware State Prison's Standard Operating Procedures ("SOP"). Doc. 25 at 12. According to Plaintiff, Defendants entirely failed to conduct an initial placement hearing or subsequent 90-day assignment reviews, denying Plaintiff an opportunity to appeal the placement decision.[2] Doc. 1-1 at 3. Plaintiff also argues, after an altercation with another inmate, Defendants violated his due process rights by requiring he complete phase one of the Tier II program again without a hearing or further review. Id. at 11.

In their Motion, Defendants assert summary judgment should be granted because Plaintiff cannot sustain his Fourteenth Amendment claims against them. Doc. 88-1. Defendants also argue they are entitled to qualified immunity. Doc. 88-1 at 16–17. In support of their Motion, Defendants submit the following documents: (1) a statement of material facts, doc. 88-2; (2) the Affidavit of Tom Gramiak, doc. 92-1;[3] (3) copies of incident reports and grievances involving Plaintiff, doc. 88-4; (4) SOP IIB09-0003, doc. 88-5; (5) SOP IIB09-0001, doc. 88-6; (6) the Affidavit of William Steedley, doc. 88-7; (7) the Affidavit of Kimberly Lowe, doc. 88-8; (8) the Affidavit of Nathan Brooks, doc. 88-9; and (9) the Affidavit of Kenny Cox, doc. 88-10.

On April 13, 2018, the same day Defendants filed their Motion for Summary Judgment, the Clerk of Court mailed Plaintiff a Notice advising him that Defendants filed a Motion for Summary Judgment and that a response must be filed by May 4, 2018. Doc. 89. That Notice further advised Plaintiff that:

---

[2] Defendant Steedley is the officer responsible for the Tier II unit, Defendant Lowe is the counselor assigned to the Tier II Unit, and Defendant Brooks was the Tier II unit manager until Defendant Cox replaced him in November 2015. Doc. 88-1 at 6; Doc. 88-7 at 1; Doc. 88-8 at 1; Doc. 88-9 at 1; Doc. 88-10 at 1; Doc. 92-1 at 9.

[3] Defendants originally submitted an unexecuted copy of Defendant Gramiak's affidavit and later supplemented their Motion to include an executed but "substantively identical" version of that affidavit. Doc. 92 at 1–2; Doc. 95.

> 1. If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.
>
> 2. If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.
>
> 3. If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

Id.

On April 27, 2018, Plaintiff filed a motion for extension of time. Doc. 91. Plaintiff asked for a 21-day extension, stating that he required "more time" to "collect supporting information and affidavits in preparation for" his Response. Doc. 91 at 1. This Court granted Plaintiff's extension and required Plaintiff file his Response by June 29, 2018. Doc. 95. The Court cautioned: "If Plaintiff fails to file an appropriate Response, the Court will presume that Plaintiff does not oppose Defendants' Motion for Summary Judgment."[4] Id. at 2. On July 2, 2018, Plaintiff filed a second motion requesting an extension to "acquire necessary documents and affidavits from other prisoners." Doc. 96. This Court, on January 28, 2019, allowed Plaintiff "an additional 30 days to file any desired response, including supporting documentation, to Defendants' motion for summary judgment."[5] Doc. 100 at 3. The Clerk mailed this Order to Plaintiff at Ware State Prison, and the Court received no indication this Order, the Clerk's

---

[4] Though another inmate unsuccessfully attempted to intervene in the action and file a responding brief on Plaintiff's behalf, docs. 36, 59, 70, 93, the Court instructed Plaintiff that he "must file this brief himself." Doc. 95 at 1. The Order specified that "[a]ny brief filed on Plaintiff's behalf, including the brief filed by Waseem Daker . . . will not suffice as an appropriate response to Defendants' Motion for Summary Judgment." Id.

[5] Plaintiff also requested a Court order "continuing the hearing on Plaintiff's Response to Defendant's Motion for Summary Judgment to a later date." Doc. 96 at 1. As no hearing has been scheduled, the Court denied that request as moot. Doc. 100 at 3–4.

3

Notice, or Defendants' Motion were undeliverable.  Plaintiff has not filed a response to Defendants' Motion for Summary Judgment.  Thus, the Defendants' Motion, as supplemented, docs. 88, 92, is unopposed.  See Local R. 7.5 ("Failure to respond within the applicable time period shall indicate that there is no opposition to a motion.").

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  The moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

When, as here, the nonmoving party would have the burden of proof at trial, the moving party may obtain summary judgment by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  In determining whether a summary judgment motion should be granted, courts must consider all reasonable inferences

which can be drawn from the record in the light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011). However, to rebut the moving party's claims, the nonmoving party must provide evidence "beyond the pleadings." Celotex, 477 U.S. at 324 ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . ."); Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995).

Though Plaintiff failed to oppose Defendants' Motion, the Court "cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, 363 F.3d 1099, 1101 (11th Cir. 2004) (citing Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir. 1988)). This is because, even when a motion for summary judgment is not opposed, "the movant is not 'absolved of the burden of showing that it is entitled to judgment as a matter of law . . . .'" Reese v. Herbert, 527 F.3d 1253, 1268–69 (11th Cir. 2008) (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001)); see Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) ("Even in an unopposed motion, the moving party still bears the burden of identifying 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." (quoting Celotex, 477 U.S. at 323)).

Consequentially, courts are not required to perform a "*sua sponte* review all of the evidentiary materials on file," but must only "ensure that the motion itself is supported by evidentiary materials." One Piece, 363 F.3d at 1101–02. Courts "review the movant's citations

to the record to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303 (citing Reese, 527 F.3d at 1268). In evaluating whether an unopposed summary-judgment motion should be granted, it is appropriate to limit review of the record to "the materials submitted by the defendant' in support of its motion." Aponte v. Royal Caribbean Cruise Lines Ltd., 739 F. App'x 531, 535 (11th Cir. 2018) (citing Mann, 588 F.3d at 1303).

## DISCUSSION

A procedural due process claim requires: "(1) deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." Shaarbay v. Palm Beach Cty. Jail, 350 F. App'x 359, 361 (11th Cir. 2009) (citing Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)). Plaintiff asserts he has a liberty interest which arises from the "differences in conditions between Tier II and general population . . . . " Doc. 40 at 2. In their Motion, Defendants argue Plaintiff failed to allege sufficient facts to show the conditions on Tier II segregation impose "atypical or significant" hardships "in relation to the ordinary incidents of prison life," as is required to create a protected liberty interest. Doc. 88-1 at 11–15; see Wilkinson v. Austin, 545 U.S. 209, 223 (2005) ("[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995))). If Defendants' position is accepted, then neither Plaintiff's initial assignment to the Tier II program on May 15, 2017, nor his February 10, 2016 "demotion" to phase one could deprive him of a liberty interest. Jackson v. Brewton, 595 F. App'x 939, 942 (11th Cir. 2014) ("Confinement in administrative segregation does not impose 'an atypical and significant hardship' on a prisoner if the conditions of his confinement mirror the general prison

population conditions."). Even if Plaintiff could point to a protected liberty interest, Defendants argue that, even if a liberty interest exists, the record demonstrates Plaintiff received constitutionally adequate process. Doc. 88-1 at 11–15.

**I.      Plaintiff's Liberty Interest: Atypical and Significant Hardship**

Defendants argue that, while the conditions in Tier II segregation are more restrictive than those in general population, the record does not show the conditions in Tier II are so different from ordinary prison life as to give rise to a protected liberty interest. Id.at 12. In support of this, Defendants submit SOP IIB09-0003, the policy governing the Tier II program, and multiple affidavits, including the affidavit of Defendant Cox, the Tier II unit manager during the majority of Plaintiff's assignment. Doc. 88-10 at 1.

The Tier II program is a "comprehensive facility-wide [s]egregation stratification plan that manages the institutional conduct and programmatic need of offenders assigned to the program." Doc. 88-5 at 1. The Tier II program was established "to protect staff, offenders, and the public from offenders[] who commit or lead others to commit violent, disruptive, predatory, or riotous actions, or who otherwise pose a serious threat to the safety and security of the institutional operation." Id. at 1. The program operates as "an offender management process . . . not a punishment measure" and uses "an incentive program-based level of privileges" based on "offender behavior and program compliance." Id. at 3–5. Once assigned to Tier II, the inmate progresses through three phases by avoiding negative behavior and meeting goals outlined in their individual case plans. Id.

The Tier II facilities are "similar to those in general population, but have fewer furnishings." Doc. 88-10 at 2–3. Cells contain a bed, mattress, toilet, sink, and wall locker. Id. at 3. Inmates in Tier II "receive the same meals as inmates in general population." Id. All

inmates, regardless of phase, receive three showers and five hours of recreation each week and may send and receive some types of mail.  Id.; Doc. 92-1 at 4.  Other privileges are directly tied to the phase of the program the inmate is completing.  For example, inmates in phase one receive one phone call and one two-hour non-contact visit a month.  Doc. 88-10 at 2–3.  In phase two, the number of visits and phone calls increases to two, and phase three inmates may make three phone calls and have three non-contact visits each month.  Id.  While all inmates in Tier II have access to medical services and legal materials, the inmates in the higher phases may also use the general and legal library.  Id.  Inmates in higher phases have more access to programming, may purchase more items from the commissary, and can retain more personal property.  Id.; Doc. 92-1 at 4.

In previous filings, Plaintiff raised multiple examples of differences between the conditions in Tier II and general population.[6]  Doc. 40 at 1–10.  He argues the Tier II mail procedures produce atypical hardship, as phase one inmates are "denied pictures, magazines, [and] books," and phase two inmates "are not allowed books or magazines."  Id. at 4–5.  Similarly, Tier II inmates are only allowed to retain state-issued personal items at phase one, state-issued and hygiene items at phase two, and photos and hygiene items at phase three.  Id. at 10.  He challenged the visitation policies described above, as inmates in general population receive eight six-hour contact visits a month.  Id. at 6.  He alleged that the five hours of exercise, if "not denied with alibis of limited personnel," occurs in a "very small seven by sixteen foot cage," while inmates in general population receive around 110 hours of out-of-cell recreation time a week.  Id. at 7.  Plaintiff also alleges that Tier II inmates use of the commissary is restricted.  Id. at 9–10.  Inmates may only buy legal supplies at phase one, legal and hygiene

---

[6]     Some, but not all, of these facts are supported in an exhibit attached to Plaintiff's Complaint. Doc. 1-2 at 8–9.

8

supplies at phase two, and, at phase three, are limited to spending $30 and choosing from a restricted commissary list.  Id.; Docs. 40-3, 40-4, 40-5.  He also argues inmates assigned to Tier II experience "routine[] denial of physical access to the library."  Doc. 40 at 2; Docs. 40-1, 40-2.

Only some of Plaintiff's claims are supported by evidence outside the pleadings.  See, e.g., Chambliss v. Buckner, 804 F. Supp. 2d 1240, 1248 (M.D. Ala. 2011) ("Allegations in an unsworn complaint are not evidence for purposes of summary judgment and, thus, cannot be considered.").  However, even if Plaintiff had supported all his claims with evidence, there is still a lack of genuine dispute as to material facts.  While Plaintiff demonstrates that Tier II conditions are more restrictive than in general population, that question is not in dispute.  The issue is whether the conditions are so severe as to create a protected liberty interest.  Here, a reasonable jury would not find such restrictions create an "atypical and significant hardship." Turner v. Warden, GDCP, 650 F. App'x 695, 700 (11th Cir. 2016) (determining plaintiff-inmate's confinement in supermax resembled ordinary prison life because plaintiff received regular meals, recreation, shower time, and weekend visits).

**II.     The Procedural Protections Afforded to Plaintiff**

Moreover, even if the conditions of confinement created a protected liberty interest, Defendants' evidence demonstrates that Plaintiff received constitutionally adequate protections. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."  Sandin, 515 U.S. at 485. However, the due process clause imposes some requirements, though minimal, before inmates may be assigned to administrative segregation.  Id.

When initially assigned to administrative segregation, "the prisoner must 'receive some notice of the charges against him and an opportunity to present his views,' whether at a hearing

or in writing." Quintanilla v. Bryson, 730 F. App'x 738, 744 (11th Cir. 2018) (quoting Hewitt v. Helms, 459 U.S. 460, 476 (1983)). An "informal, nonadversary evidentiary review" is "sufficient both for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him." Hewitt, 459 U.S. at 476. Inmates who remain in administrative segregation must also receive "some sort of periodic review of the confinement." Hale v. Sec'y for Dep't of Corr., 345 F. App'x 489, 493 (11th Cir. 2009) (quoting Hewitt, 459 U.S. at 476). However, these periodic reviews do not "require that prison officials permit the submission of any additional evidence or statements." Hewitt, 459 U.S. at 477. Rather, prison officials may base their decisions on "facts relating to a particular prisoner," their "general knowledge of prison conditions and tensions," and other "administrative considerations." Id. at 477 n.9.

Ware State Prison's practice is to place all inmates in administrative segregation upon arrival at the facility until appropriate housing is available. Doc. 92-1. Thus, when Plaintiff was transferred to Ware State Prison on May 7, 2015, he was initially placed in Tier II. Id. On May 12, 2015, the prison's Classification Committee reviewed his housing assignment. Doc. 88-7 at 2; Doc. 88-8 at 2; Doc. 88-9 at 2; Doc. 92-1 at 9–10. The Classification Committee recommended Plaintiff be assigned to the Tier II program "due to [his] April 24, 2015 assault on an officer" at Rogers State Prison and "facts which showed that he was a threat to the safe and secure operations" of the prison. Doc. 88-7 at 3; Doc. 88-8 at 2; Doc. 88-9 at 3; Doc. 92-1 at 9–10. The Committee consisted of Defendants Steedley, Lowe, and Brooks, all of whom submitted affidavits stating Plaintiff had "an opportunity to make a statement and ask questions" at the hearing and received an explanation and an appeal form afterward. Doc. 88-7 at 2; Doc. 88-8 at

10

2; Doc. 88-9 at 2.  Outside of his unsworn statements in pleadings, Plaintiff offers no evidence to the contrary.  While Plaintiff may not agree with the outcome, he received notice and an opportunity to be heard, which is all the due process clause requires.

Similarly, Plaintiff received a 90-day review on February 10, 2016, roughly two days after he received a (later expunged) disciplinary report for fighting with another inmate. Doc. 92-1 at 11–13; Doc. 88-4 at 29; Doc. 88-7 at 3; Doc. 88-8 at 3; Doc. 88-10 at 2. Defendants again submit several affidavits from the participants present at the February 10 review.[7]  Docs. 88-7, 88-8, 88-10.  The Committee decided to reassign Plaintiff to phase one based on his fight with his cellmate.  Doc. 88-7 at 3; Doc. 88-8 at 3; Doc. 88-10 at 2.  Though the disciplinary report was later expunged, inmates "do[] not need to be found guilty of a disciplinary report" to be assigned to a lower level of the program.  Doc. 88-7 at 3.  Rather, "[a]ny negative behavior is considered."  Doc. 88-7 at 3; Doc. 88-8 at 3; Doc. 88-10 at 2.  The Committee provided Plaintiff with written notice of their decision, which Plaintiff unsuccessfully appealed the next day.  The February 10 hearing exceeded the procedural protections required by the due process clause.  I, therefore, **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, docs. 88, 92, and **DISMISS** Plaintiff's Complaint.

### III. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[8]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these

---

[7] Defendants Steedley and Lowe appeared at both hearings, while Defendant Cox attended the February 10, 2016 review after replacing Defendant Brooks as Tier II unit manager in November 2015. Doc. 88-9 at 1; Doc. 88-10 at 1; Doc. 92-1 at 9, 11.

[8] A certificate of appealability is not required in this § 1983 action.

issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009). Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on my review of the merits of Defendants' Motion for Summary Judgment, docs. 88, 92, I **RECOMMEND** the Court **GRANT** Defendants' Motion, **DISMISS** Plaintiff's Complaint, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address

any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 7th day of March, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA